# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

GREGORY HANNAH-JONES,     )
                       )     CIVIL FILE ACTION NO.:
     Plaintiff,         )
                       )     <u>1:24-cv-05318-SEG-WEJ</u>
v.                       )
                       )
AMAZON.COM SERVICES, INC.,   )     JURY TRIAL DEMANDED
                       )
     Defendant.       )

## FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiff Gregory Hannah-Jones, ("Plaintiff" or "Mr. Hannah-Jones") files this First Amended Complaint for Damages as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(B) against Defendant Amazon.com Services, Inc. ("Amazon" or "Defendant").

In support of his claims, Plaintiff asserts as follows:

## NATURE OF COMPLAINT

1. Plaintiff was subjected to a hostile work environment, racial discrimination, and sexual discrimination based on his sex/sexual orientation while employed as an Executive Assistant for Amazon.

2. Amazon, Plaintiff's former employer of nearly four years, denied Plaintiff a promotion because of his race and sexual orientation.

3. Plaintiff exercised protected speech by complaining about the

discrimination and was retaliated against in the form of suspension and then termination for exercising such protected speech.

4.    Plaintiff brings federal claims for hostile work environment based on racial discrimination, sexual discrimination based on his sex/sexual orientation, and retaliation in violation of 28 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* ("Title VII").

5.    Plaintiff brings related Washington State claims for hostile work environment based on racial discrimination, sexual discrimination based on his sex/sexual orientation, and retaliation in violation of the Washington Law Against Discrimination ("WLAD"), RCW 49.60, *et. seq.*

6.    Plaintiff seeks back pay and lost economic benefits of employment, reinstatement or front pay in lieu thereof, compensatory and punitive damages, and reasonable attorney's fees and costs, to remedy the violation of his civil rights.

## JURISDICTION AND VENUE

7.    Plaintiff's claims present federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4); and 42 U.S.C. §2000e *et seq*.

8.    This Court also has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.    Venue is properly placed in this District because the Defendant, at all

relevant times, transacted business in this District and because Plaintiff resides in this District pursuant to 28 U.S.C. §1391(b).

10.    Venue is proper in this Court.

11.    Plaintiff is entitled to bring actions of this kind and nature in this judicial district.

12.    On November 30, 2023, Plaintiff timely filed a Charge of Discrimination ("First Charge") against Amazon with the Equal Opportunity Commission ("EEOC") for alleged claims discrimination and retaliation based on race and sex.

13.    On March 26, 2024 , the EEOC issued Plaintiff a Notice of Right to Sue based on his First Charge.

14.    On June 20, 2024, Plaintiff timely filed a new Charge of Discrimination ("Second Charge") against Amazon with the Equal Opportunity Commission ("EEOC") for alleged claims discrimination and retaliation based on disability, race, and sex.

15.    Plaintiff's Second Charge is independently timely under EEOC rules because Washington State is classified as a deferral state and extends the deadline to file an EEOC charge to 300 days of the allegedly offending conduct.

16.    Plaintiff's Second Charge alleged new claims and instances of discrimination and retaliation.

3

17.    On August 21, 2024, the EEOC issued Plaintiff a Notice of Right to Sue based on his Second Charge.

18.    Plaintiff timely filed his Complaint on November 19, 2024 by the 90 day deadline from the Notice of Right to Sue based on his Second Charge.

## PARTIES

19.    Plaintiff is a citizen of the United States, and a resident of Georgia.

20.    Amazon is a corporation organized under the laws of the State of Delaware.

21.    Amazon is headquartered in the State of Washington.

22.    Amazon's principal place of business on file with the Georgia Secretary of State is 410 Terry Avenue North, Seattle, WA, 98109-5210.

23.    Amazon may be served with process by personal service upon its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092.

24.    At all times material hereto, Amazon was authorized to conduct business in the State of Georgia.

25.    Amazon is subject to the personal jurisdiction of this Court.

## FACTUAL ALLEGATIONS

### A. Mr. Hannah-Jones's Hiring and Employment.

26.     Amazon employed Plaintiff as an executive assistant from April 22, 2019, through November 22, 2023.

27.     Plaintiff is an African American man (protected under Title VII and § 1981).

28.     Plaintiff is a gay man (protected under Title VII).

29.     Plaintiff began his employment for Amazon in Seattle, Washington.

30.     Amazon operates a location in Atlanta, Georgia ("ATL11") where Plaintiff was employed starting in 2020.

31.     While employed in Georgia, Plaintiff still regularly returned to Seattle, Washington for work purposes.

32.     At all times material hereto, Amazon was responsible for promulgating employment policies and making employment decisions regarding Plaintiff's employment.

33.     At all times material hereto, Amazon supervisors in Washington made employment decisions regarding Plaintiff's employment.

34.     Plaintiff's job responsibilities included, among other things, managing domestic and international travel, managing expense report coordination and submission, organizing activities and meetings for various teams, and managing

complex calendar and scheduling requirements, including interfacing with senior executives and other executive assistants.

35.    In the beginning of his tenure, Plaintiff was the executive assistant to Reagan Cannon, Director for Digital Devices and Alexa Support.

36.    Later, Plaintiff was the executive assistant to Tobin Weldele, Vice President of Worldwide Customer Service.

## B. Amazon Denied Plaintiff Promotions Based On His Race and/or Sexual Orientation.

37.    Plaintiff is a member of multiple protected classes under Title VII and § 1981, as an African-American and gay man, and was treated differently because of these protected characteristics.

38.    From 2021 to 2023, Plaintiff was repeatedly denied promotion to a Level 6 position on the basis of his race and/or sexual orientation.

39.    Plaintiff successfully performed the duties of a Level 6 employee.

40.    Based on his exceptional work performance, Plaintiff received an "Exceeds" or "Exceeds High Bar" performance review every year from 2020 to 2023.

41.    Based on his exceptional work performance, Plaintiff's salary increased every year from 2019 to 2023.

42.    In 2022, Plaintiff received a one-time bonus of $10,000.00 for his high-level performance.

43.    At Amazon, the promotion process starts with the endorsement of your manager, who prepares a promotional document outlining the scope of work. The candidate's manager must gather six document contributors and then submit the document to the promotional panel for approval.

44.    Beginning in 2021, Plaintiff prepared the necessary documents to submit for promotion once he received Weldele's endorsement. Plaintiff defined and executed the scope of work, gathering contributors, and lead global committees and extracurricular activities to ensure that Plaintiff's contributions to Amazon were not in question during the approval process.

45.    In discussions with Plaintiff's manager, Weldele, regarding promotion, Weldele never expressed any concerns about Plaintiff's performance and encouraged Plaintiff's promotion.

46.    Plaintiff met all promotion requirements, including defining and executing work scopes, leading global committees, and receiving Exceeds High Bar performance reviews for multiple years.

47.    Despite performing the duties of a Level 6 employee, Plaintiff's supervisor, Weldele, consistently delayed the endorsement under vague pretexts, stating Plaintiff must "wait until the next quarter."

48.    Despite his exceptional work performance and numerous requests to his supervisor, Weldele, Plaintiff was denied promotion to a Level 6 employee.

49.     Weldele works in Defendant's Seattle, Washington office and the decision to not endorse Plaintiff for promotion was made in Washington.

50.     At all times from 2021 onward, Plaintiff was qualified, by virtue of his training, performance, and experience, for a promotion to a Level 6 employee.

51.     Plaintiff met all objective qualifications established by Amazon for promotion to a Level 6 position and was more qualified than other employees who were promoted.

52.     Plaintiff was denied promotion to a Level 6 employee due to his race and/or sexual orientation, despite his exceptional qualifications and performance.

53.     Plaintiff's denied promotion to a Level 6 employee due to his race interfered with his employment relationship with Amazon.

54.     Plaintiff was denied promotion to a Level 6 position in spite of the fact that he was highly qualified for the position and had successfully performed the duties of the position.

55.     The justifications provided by Plaintiff's supervisor, such as "wait until the next quarter," were vague and pretextual.

56.     Amazon's refusal to promote Plaintiff due to his race violated Plaintiff's rights under 42 U.S.C. § 1981 and Title VII.

57.     Amazon's refusal to promote Plaintiff due to his sexual orientation violated Plaintiff's rights under Title VII.

**C. Amazon Promoted Less Qualified Individuals Instead of Plaintiff.**

58.     Throughout Plaintiff's employment, numerous less qualified white, straight employees were promoted from Plaintiff's position to advanced positions.

59.     Amazon relied on subjective and vague criteria, such as repeated statements that Plaintiff must "wait until the next quarter," to delay and deny his promotion, while similarly situated white, straight employees were promoted without facing such hurdles or delays.

60.     These other white, straight employees were less qualified than Plaintiff, but they were promoted because they did not face the same subjective and discriminatory barriers that Plaintiff faced based on his race and/or sexual orientation.

61.     Eryn Strong, a white, straight female, was promoted to a Level 6 position a little over a year after being hired by Amazon.

62.     Ms. Strong was less qualified for the position than Plaintiff.

63.     Heather McCain, a white, straight female, had a scope created for her within a year being hired by Amazon, with opportunities to work on projects and travel globally, before her promotion to Director of Social Media in Customer Service.

64.     Ms. McCain was less qualified for the position than Plaintiff.

65.     Kelly Coffee-Tavi, a white, straight female, was promoted to a Level 6

position after just seven months in her role at Amazon.

66.    Ms. Coffee-Tavi was less qualified for the position than Plaintiff.

67.    These other white, straight employees were less qualified than Plaintiff.

**D. Mr. Hannah-Jones was Discriminated Against Based on His Race and Sexual Orientation.**

68.    Plaintiff is a member of multiple protected classes under Title VII and § 1981, as an African-American and gay man, and was treated differently because of these protected characteristics.

69.    Plaintiff suffered harassment and discrimination on account of his race.

70.    Plaintiff suffered harassment and discrimination on account of his sexual orientation.

71.    Plaintiff experienced unwelcome harassment, which was pervasive and objectively hostile, creating an intolerable work environment.

72.    Other comparable employees outside of Plaintiff's protected class were treated better than Plaintiff and did not suffer harassment or a hostile work environment on account of race.

73.    Other comparable employees outside of Plaintiff's protected class were treated better than Plaintiff and did not suffer harassment or a hostile work environment on account of sexual orientation.

74.    Jean-Marc Dupont, a white senior executive director of SDS operations, product and tech, and a supervisor to Plaintiff, harassed and

discriminated against Plaintiff because of his race and/or sexual orientation.

75.   Dupont was overcritical of Plaintiff's work and emails but not criticize white, straight employees for the same or similar offenses.

76.   Dupont frequently responded to Plaintiff's decisions with dismissive or belittling comments with other leadership employees copied to the email.

77.   Dupont publicly questioned Plaintiff's competence and undermined his authority in leadership meetings.

78.   Dupont was aggressive and hostile in his communications and dealings with Plaintiff but not other white, straight employees.

79.   Dupont would often give gifts and other preferential treatment to other white, straight employees but never to Plaintiff.

80.   Dupont would publicly interact with other white, straight employees while ignoring Plaintiff, creating a noticeable disparity in treatment.

81.   Dupont's aggressive and discriminatory behavior reached a head in August 2023 when assaulted Plaintiff in a work conference room. See Section E below.

82.   Dupont's frequent belittling emails and public undermining of Plaintiff were ongoing and pervasive acts that created a hostile work environment.

83.   Dupont's frequent belittling emails and public undermining of Plaintiff significantly affected Plaintiff's ability to perform his job.

84.    Dupont's criticism, belittling comments, and aggressive behavior were directed at Plaintiff because he is African-American and gay.

85.    Reagan Cannon, a Director and a supervisor to Plaintiff, harassed and discriminated against Plaintiff because of his race and/or sexual orientation.

86.    Cannon worked at Amazon's Seattle Washington office while supervising and harassing Plaintiff.

87.    Cannon posted a picture of a confederate flag on her social media account in order to intimidate and threaten black and gay employees including Plaintiff.

88.    Cannon would often require Plaintiff to perform tasks outside of his job duties and beneath his position.

89.    Cannon required Plaintiff to walk her dog and clean up its feces.

90.    Cannon required Plaintiff to get her lunch or coffee.

91.    Cannon required Plaintiff to get dinner for her family.

92.    Cannon did not require other white, straight employees to perform these personal and rudimentary tasks.

93.    Cannon's actions (e.g., requiring Plaintiff to perform demeaning tasks) were based on stereotypes and biases about Plaintiff's sexual orientation and race.

94.    Cannon's repeated demeaning requests of Plaintiff were ongoing and pervasive acts that created a hostile work environment.

95.     Cannon's repeated demeaning requests of Plaintiff significantly affected Plaintiff's ability to perform his job.

96.     Dupont's overcritical and hostile behavior toward Plaintiff, as well as Cannon's demeaning demands, were motivated by racial and sexual orientation biases, as evidenced by their preferential treatment of white, straight employees.

97.     Defendant is liable for the harassment and hostile work environment Plaintiff endured because Dupont and Cannon were agents of Amazon acting within the scope of their employment, and Amazon failed to take appropriate corrective action despite being aware of the harassment.

98.     Plaintiff was denied promotions on account of his sexual orientation and his failure to conform to heterosexual stereotypes held by Amazon.

99.     Plaintiff was ultimately terminated on account of his race.

100.   Plaintiff was ultimately terminated on account of his sexual orientation and sex.

**E. The August 23, 2023 Incident.**

101.   On August 23, 2023, Plaintiff attended a talent review meeting with several Amazon leadership associates and human resources executives.

102.   The meeting occurred at Amazon's Seattle Washington office.

103.   During the meeting, several leadership associates and HR executives were present including, but not limited to,  Tobin Weldele (Vice President of

Worldwide Customer Service), Patrick Brady (HR), Alexis Stephens (Head of HR), Angela Brown (HR), Sahil Tewari (HR), Alice Pope (VP), Sanjay Hemani (Director), Shelly Robertson (Director), Scott Jones (Director), Stephanie Soares (HR), Anindya Upadhyaya (HR), Mallyna Sessions (HR), Abhijit Naik (HR), Dee Wilkins (HR), Oksana Kovalenko (HR), Lucia Jimenez (HR), Sean Curtis (HR), Amby Sharma (HR).

104.   The meeting room was having audio issues, which Plaintiff tried to trouble shoot.

105.   A white senior executive, Jean-Marc Dupont, aggressively confronted Plaintiff about the audio issues.

106.   Plaintiff explained to Dupont that he was doing everything he could to remedy the situation.

107.   Dupont then told Plaintiff that he wanted to move all the executives to the conference room on the tenth floor of the building.

108.   Plaintiff noted that the maximum capacity for the conference room on the tenth floor was 16 and there were over 20 people present at the talent review.

109.   Plaintiff is 5'11 and 165 pounds. Dupont is over 6'5 and over 200 pounds.

110.   At one point, Plaintiff put his hands up to guard his face as he believed that Dupont was going to physically attack Plaintiff.

111.    Dupont got further upset, stood over Plaintiff, pointed in Plaintiff's face, and said with a raised voice, "If this does not work tomorrow, this is on you!" Dupont then stormed off.

112.    During Dupont's attack, Plaintiff feared for his safety.

113.    Within minutes of his interaction with Dupont, Plaintiff reported this incident to Alexis Stevens, Head of Human Resources and Tobin Weldele.

114.    Plaintiff was in tears and in fear when addressing the issue to Weldele, and Mr. Weldele reassured Plaintiff that he would talk with Dupont about his behavior.

115.    On November 14, 2023, after Amazon failed to investigate this incident or otherwise follow-up with Plaintiff, Plaintiff reported the situation to the Ethics hotline to have it documented.

116.    In his report, Plaintiff stated that he believed he was being targeted and discriminated against on account of his race and sex/sexual orientation.

**F. Plaintiff's Complaints of Discrimination.**

117.    Throughout his employment, Plaintiff complained to Weldele about the fairness of the above stated actions, particularly regarding the differential treatment of white and straight team members.

118.    Plaintiff also complained to Weldele regarding the discriminatory and harassing behavior of Dupont.

119.   Plaintiff also raised concerns with Weldele about the fairness of Plaintiff not being promoted when less qualified white and straight team employees were being promoted.

120.   Plaintiff also complained to Human Resources regarding the differential treatment of white and straight team members.

121.   Specifically, Plaintiff reported the August 23 incident to Alexis Stevens, Head of Human Resources, and complained of Mr. Dupont's ongoing harassment and discrimination of Plaintiff based on his race and sexual orientation.

122.   On November 14, 2023, Plaintiff again complained to Amazon via the Ethics hotline that Plaintiff had been discriminated based on his race and sexual orientation.

123.   On November 17, 2023, Plaintiff was told that he was suspended pending further investigation.

124.   Amazon failed to further investigate the allegations raised by Plaintiff.

**G. Plaintiff's Termination.**

125.   In retaliation against Plaintiff for his complaints about Amazon's discriminatory employment practices, Amazon terminated Plaintiff on November 22, 2023.

126.   Plaintiff was fired within 8-days of filing a complaint with the Ethics hotline for discrimination based on his race and sex/sexual orientation.

127.   The reasons provided by Amazon for Plaintiff's termination are pretextual.

128.   Amazon discriminated against Plaintiff on account of his race and sex/sexual orientation.

129.   Amazon retaliated against Plaintiff for engaging in protected activity: complaining and reporting discrimination and harassment.

130.   In over four years of employment, Plaintiff never received a negative performance review or any complaints about his work, and he had been given commendation by several managers.

## CLAIMS FOR RELIEF

### COUNT I
### DISCRIMINATION & HARASSMENT ON THE BASIS OF RACE
### (TITLE VII, 42 U.S.C. §2000e *et seq*.)

131.   Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

132.   Plaintiff brings this count against Defendant pursuant to Title VII.

133.   As an African American, Plaintiff is a member of a protected class.

134.   At all times from 2021 onward, Plaintiff was qualified, by virtue of his training and experience, for a promotion to a Level 6 employee.

135.   Plaintiff successfully performed the duties of a Level 6 employee.

136.   Despite numerous requests to his supervisor, Tobin Weldele, Plaintiff

was denied promotion to a Level 6 employee.

137.   Throughout Plaintiff's employment, numerous less qualified white employees were promoted from Plaintiff's position to advanced positions.

138.   These other white employees were less qualified than Plaintiff.

139.   Plaintiff was denied promotion to a Level 6 employee due to his race.

140.   Defendant's discriminatory conduct had adverse consequences for Plaintiff.

141.   Defendant's conduct was not motivated by job-related considerations or by business necessity, as Plaintiff was qualified for a Level 6 role.

142.   Rather than promoting Plaintiff, Defendant fired Plaintiff on November 22, 2023.

143.   In denying promotion and terminating Plaintiff, Defendant intentionally and maliciously violated Plaintiff's rights under Title VII.

144.   In the alternative, Defendant acted with reckless disregard for Plaintiff's rights.

145.   Plaintiff is a black male who was subjected to a hostile work environment in the form of racial harassment based on his race in violation of Title VII, 42 U.S.C. § 2000e *et seq*.

146.   During his employment with Defendant, Plaintiff was subjected to severe and/or pervasive unwelcome statements and conduct of a racial nature by

Defendant and its agents that substantially interfered with the terms and conditions of his employment. Plaintiff complained about the harassing conduct, yet no action was taken by Defendant.

147.    Because Plaintiff was subjected to a hostile work environment based on his race and because Defendant took no action on his complaint or otherwise to protect him from a harassing work environment of which it had actual and/or constructive knowledge, Defendant engaged in racial discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964.

148.    Plaintiff is entitled to damages including back wages and lost benefits, front pay and/or reinstatement; compensatory damages, including emotional distress, anguish, inconvenience, loss of income, loss of enjoyment of life, humiliation, and other indignities; punitive damages; attorneys' fees; and costs of litigation pursuant to Title VII at 42 U.S.C.A. § 2000e-5 and other applicable law.

149.    Because Defendant acted with intent, malice, or reckless disregard for Plaintiff's rights, Plaintiff is additionally entitled to punitive damages.

## COUNT II
## DISCRIMINATION ON THE BASIS OF RACE
### (42 U.S.C. 1981)

150.    Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

151.    Plaintiff brings this count against Defendant pursuant to 42 U.S.C. §

1981.

152.   At all times material to this Complaint, Plaintiff and Defendant were parties to an employment agreement under which Plaintiff worked for Defendant and was compensated by Defendant for his work.

153.   Plaintiff performed all of his contractual obligations.

154.   As a Black male and an African American, Plaintiff is a member of a protected class.

155.   At all times from 2021 onward, Plaintiff was qualified, by virtue of his training and experience, for a promotion to a Level 6 employee.

156.   Plaintiff successfully performed the duties of a Level 6 employee.

157.   Despite numerous requests to his supervisor, Tobin Weldele, Plaintiff was denied promotion to a Level 6 employee.

158.   Throughout Plaintiff's employment, numerous less qualified white employees were promoted from Plaintiff's position to advanced positions.

159.   These other white employees were less qualified than Plaintiff.

160.   Plaintiff was denied promotion to a Level 6 employee due to his race.

161.   Defendant's discriminatory conduct had adverse consequences for Plaintiff.

162.   Defendant's conduct was not motivated by job-related considerations or by business necessity, as Plaintiff was qualified for a Level 6 role.

163.    Rather than promoting Plaintiff, Defendant fired Plaintiff November 22, 2023.

164.    In denying promotion and terminating Plaintiff, Defendant intentionally and maliciously violated Plaintiff's rights under 42 U.S.C. § 1981.

165.    In the alternative, Defendant acted with reckless disregard for Plaintiff's rights.

166.    By the conduct described above, Defendant intentionally deprived Plaintiff of the rights enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of his contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

167.    Plaintiff is entitled to damages including back wages and lost benefits, front pay and/or reinstatement; compensatory damages, including emotional distress, anguish, inconvenience, loss of income, loss of enjoyment of life, humiliation, and other indignities; punitive damages; attorneys' fees; and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under 42 U.S.C. § 1981 and other applicable law.

168.    Because Defendant acted with intent, malice, or reckless disregard for Plaintiff's rights, Plaintiff is additionally entitled to punitive damages under 42 U.S.C. §1981a.

## COUNT III
## DISCRIMINATION ON THE BASIS OF SEX
### (TITLE VII, 42 U.S.C. §2000e *et seq*.)

169.   Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

170.   Plaintiff brings this count against Defendant pursuant to Title VII.

171.   As a gay, homosexual man, Plaintiff is a member of a protected class.

172.   At all times from 2021 onward, Plaintiff was qualified, by virtue of his training and experience, for a promotion to a Level 6 employee.

173.   Plaintiff successfully performed the duties of a Level 6 employee.

174.   Despite numerous requests to his supervisor, Tobin Weldele, Plaintiff was denied promotion to a Level 6 employee.

175.   Throughout Plaintiff's employment, numerous less qualified straight, non-homosexual employees were promoted from Plaintiff's position to advanced positions.

176.   These straight, non-homosexual employees were less qualified than Plaintiff.

177.   Plaintiff was denied promotion to a Level 6 employee due to his sexual orientation.

178.   Defendant's discriminatory conduct had adverse consequences for Plaintiff.

22

179.    Defendant's conduct was not motivated by job-related considerations or by business necessity, as Plaintiff was qualified for a Level 6 role.

180.    Rather than promoting Plaintiff, Defendant fired Plaintiff on April 14, 2023.

181.    In denying promotion and terminating Plaintiff, Defendant intentionally and maliciously violated Plaintiff's rights under Title VII.

182.    In the alternative, Defendant acted with reckless disregard for Plaintiff's rights.

183.    Plaintiff is a gay male who was subjected to a hostile work environment in the form of sexual harassment based on his sex in violation of Title VII, 42 U.S.C. § 2000e *et seq*.

184.    During his employment with Defendant, Plaintiff was subjected to severe and/or pervasive unwelcome statements and conduct of a sexual nature by Defendant and its agents that substantially interfered with the terms and conditions of his employment. Plaintiff complained about the harassing conduct, yet no action was taken by Defendant.

185.    Because Plaintiff was subjected to a hostile work environment based on his sex and permeating with acts of a sexual nature and because Defendant took no action on his complaint or otherwise to protect him from a sexually harassing work environment of which it had actual and/or constructive knowledge, Defendant

engaged in sex discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964.

186.    Plaintiff is entitled to damages including back wages and lost benefits, front pay and/or reinstatement; compensatory damages, including emotional distress, anguish, inconvenience, loss of income, loss of enjoyment of life, humiliation, and other indignities; punitive damages; attorneys' fees; and costs of litigation pursuant to Title VII at 42 U.S.C.A. § 2000e-5 and other applicable law.

187.    Because Defendant acted with intent, malice, or reckless disregard for Plaintiff's rights, Plaintiff is additionally entitled to punitive damages.

## COUNT IV
## RETALIATION
### (TITLE VII, 42 U.S.C. §2000e *et seq*.)

188.    Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

189.    Plaintiff brings this count against Defendant pursuant to Title VII.

190.    Plaintiff successfully performed the duties of a Level 6 employee.

191.    Despite numerous requests to his supervisor, Tobin Weldele, Plaintiff was denied promotion to a Level 6 employee.

192.    Throughout Plaintiff's employment, numerous less qualified white employees were promoted from Plaintiff's position to advanced positions.

193.    These other white employees were less qualified than Plaintiff.

194.   Plaintiff was denied promotion to a Level 6 employee.

195.   In November 2023, Plaintiff complained to Defendant's Ethics Hotline about Defendant's discriminatory treatment of him.

196.   Plaintiff's act of complaining to Defendant about Defendant's discriminatory employment practices constitutes protected activity under Title VII.

197.   In retaliation against Plaintiff for his complaints about Defendant's discriminatory employment practices, Defendant terminated Plaintiff on November 22, 2023.

198.   Defendant's justification of Plaintiff's termination is patently pretextual.

199.   During Plaintiff's employment, Plaintiff had performed his job duties exceptionally well.

200.   In over four years of employment, Plaintiff never received a negative performance review or any complaints about his work, and he had been given commendation by several managers.

201.   But for Plaintiff's opposition to the discriminatory treatment he suffered based on race and sexual orientation, his employment would not have ended.

202.   Defendant's termination of Plaintiff constitutes retaliation under Title VII.

203.   Defendant's actions were committed with reckless disregard for his right to be free from retaliation for his opposition to discriminatory employment practices.

204.   As a direct result of Defendant's unlawful retaliation, Plaintiff has suffered mental and emotional distress in an amount to be determined at trial by the enlightened conscience of an impartial jury. Plaintiff has also suffered lost wages and the benefits of employment, which he seeks to recover from Defendant.

205.   As a direct result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, mental and emotional distress, humiliation, outrage, damage to his reputation, the deprivation of his rights under federal law, and he is entitled to compensatory and punitive damages.

206.   Plaintiff is entitled to damages including back wages and lost benefits, front pay and/or reinstatement; compensatory damages, including emotional distress, anguish, inconvenience, loss of income, loss of enjoyment of life, humiliation, and other indignities; punitive damages; attorneys' fees; and costs of litigation pursuant to Title VII at 42 U.S.C.A. § 2000e-5, and other applicable law.

**COUNT V**
**RETALIATION**
**(42 U.S.C. 1981)**

207.   Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

26

208.  Plaintiff brings this count against Defendant pursuant to 42 U.S.C. § 1981.

209.  At all times material to this Complaint, Plaintiff and Defendant were parties to an employment agreement under which Plaintiff worked for Defendant and was compensated by Defendant for his work.

210.  Plaintiff performed all of his contractual obligations.

211.  As a Black male and an African American, Plaintiff is a member of a protected class.

212.  At all times from 2021 onward, Plaintiff was qualified, by virtue of his training and experience, for a promotion to a Level 6 employee.

213.  Plaintiff successfully performed the duties of a Level 6 employee.

214.  In November 2023, Plaintiff complained to Defendant's Ethics Hotline about Defendant's discriminatory treatment of him.

215.  Plaintiff's act of complaining to Defendant about Defendant's discriminatory employment practices constitutes protected activity under 42 U.S.C. § 1981.

216.  In retaliation against Plaintiff for his complaints about Defendant's discriminatory employment practices, Defendant terminated Plaintiff on November 22, 2023.

217.  Defendant's justification of Plaintiff's termination is patently

pretextual.

218.   During Plaintiff's employment, Plaintiff had performed his job duties exceptionally well.

219.   In over four years of employment, Plaintiff never received a negative performance review or any complaints about his work, and he had been given commendation by several managers.

220.   But for Plaintiff's opposition to the discriminatory treatment he suffered based on race and sexual orientation, his employment would not have ended.

221.   Defendant's termination of Plaintiff constitutes retaliation under 42 U.S.C. § 1981.

222.   Defendant's actions were committed with reckless disregard for his right to be free from retaliation for his opposition to discriminatory employment practices.

223.   As a direct result of Defendant's unlawful retaliation, Plaintiff has suffered mental and emotional distress in an amount to be determined at trial by the enlightened conscience of an impartial jury. Plaintiff has also suffered lost wages and the benefits of employment, which he seeks to recover from Defendant.

224.   As a direct result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, mental and emotional distress, humiliation, outrage, damage to his

reputation, the deprivation of his rights under federal law, and he is entitled to compensatory and punitive damages.

225.   Plaintiff is entitled to damages including back wages and lost benefits, front pay and/or reinstatement; compensatory damages, including emotional distress, anguish, inconvenience, loss of income, loss of enjoyment of life, humiliation, and other indignities; punitive damages; attorneys' fees; and costs of litigation pursuant to 42 U.S.C. § 1981 and other applicable law.

## COUNT VI
## DISCRIMINATION ON THE BASIS OF RACE
### (WLAD, RCW 49.60, *et. seq.*)

226.   Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

227.   Plaintiff brings this count against Defendant pursuant to the Washington Law Against Discrimination.

228.   Defendant is Plaintiff's "employer" and have more than eight employees in their employ.

229.   Plaintiff is a Black, Africain American man.

230.   WLAD prohibits any person or their agent or employee from discriminating against any person in compensation or in other terms or conditions of employment because of sex or sexual orientation. RCW 49.60.030.

231.   Under WLAD, an employer is strictly liable for the discriminatory acts

of its employees or agents and cannot escape liability by asserting a lack of fault or negligence in training or supervision.

232. At all times from 2021 onward, Plaintiff was qualified, by virtue of his training and experience, for a promotion to a Level 6 employee.

233. Plaintiff successfully performed the duties of a Level 6 employee.

234. In November 2023, Plaintiff complained to Defendant's Ethics Hotline about Defendant's discriminatory treatment of him.

235. Plaintiff's act of complaining to Defendant about Defendant's discriminatory employment practices constitutes protected activity under the WLAD.

236. In retaliation against Plaintiff for his complaints about Defendant's discriminatory employment practices, Defendant terminated Plaintiff on November 22, 2023.

237. Defendant's justification of Plaintiff's termination is patently pretextual.

238. During Plaintiff's employment, Plaintiff had performed his job duties exceptionally well.

239. In over four years of employment, Plaintiff never received a negative performance review or any complaints about his work, and he had been given commendation by several managers.

240.  But for Plaintiff's opposition to the discriminatory treatment he suffered based on race and sexual orientation, his employment would not have ended.

241.  Defendant's termination of Plaintiff constitutes retaliation under the WLAD.

242.  Defendant's actions were committed with reckless disregard for his right to be free from retaliation for his opposition to discriminatory employment practices.

243.  As a direct result of Defendant's unlawful retaliation, Plaintiff has suffered mental and emotional distress in an amount to be determined at trial by the enlightened conscience of an impartial jury. Plaintiff has also suffered lost wages and the benefits of employment, which he seeks to recover from Defendant.

244.  As a direct result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, mental and emotional distress, humiliation, outrage, damage to his reputation, the deprivation of his rights under Washingtons state law, and he is entitled to compensatory and punitive damages.

245.  Plaintiff is entitled to damages including back wages and lost benefits, front pay and/or reinstatement; compensatory damages, including emotional distress, anguish, inconvenience, loss of income, loss of enjoyment of life, humiliation, and other indignities; punitive damages; attorneys' fees; and costs of

litigation pursuant to RCW 49.60, *et. seq.* and other applicable law.

## COUNT VII
## DISCRIMINATION ON THE BASIS OF SEX
## (WLAD, RCW 49.60, *et. seq.*)

246.    Plaintiff incorporates and re-alleges all preceding paragraphs as if set forth fully herein.

247.    Plaintiff brings this count against Defendant pursuant to the Washington Law Against Discrimination.

248.    Defendant is Plaintiff's "employer" and have more than eight employees in their employ.

249.    Plaintiff is a homosexual man.

250.    WLAD prohibits any person or their agent or employee from discriminating against any person in compensation or in other terms or conditions of employment because of race, color, or national origin. RCW 49.60.030

251.    Under WLAD, an employer is strictly liable for the discriminatory acts of its employees or agents and cannot escape liability by asserting a lack of fault or negligence in training or supervision.

252.    At all times from 2021 onward, Plaintiff was qualified, by virtue of his training and experience, for a promotion to a Level 6 employee.

253.    Plaintiff successfully performed the duties of a Level 6 employee.

254.    In November 2023, Plaintiff complained to Defendant's Ethics Hotline

about Defendant's discriminatory treatment of him.

255. Plaintiff's act of complaining to Defendant about Defendant's discriminatory employment practices constitutes protected activity under the WLAD.

256. In retaliation against Plaintiff for his complaints about Defendant's discriminatory employment practices, Defendant terminated Plaintiff on November 22, 2023.

257. Defendant's justification of Plaintiff's termination is patently pretextual.

258. During Plaintiff's employment, Plaintiff had performed his job duties exceptionally well.

259. In over four years of employment, Plaintiff never received a negative performance review or any complaints about his work, and he had been given commendation by several managers.

260. But for Plaintiff's opposition to the discriminatory treatment he suffered based on race and sexual orientation, his employment would not have ended.

261. Defendant's termination of Plaintiff constitutes retaliation under the WLAD.

262. Defendant's actions were committed with reckless disregard for his

right to be free from retaliation for his opposition to discriminatory employment practices.

263.   As a direct result of Defendant's unlawful retaliation, Plaintiff has suffered mental and emotional distress in an amount to be determined at trial by the enlightened conscience of an impartial jury. Plaintiff has also suffered lost wages and the benefits of employment, which he seeks to recover from Defendant.

264.   As a direct result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, mental and emotional distress, humiliation, outrage, damage to his reputation, the deprivation of his rights under Washingtons state law, and he is entitled to compensatory and punitive damages.

265.   Plaintiff is entitled to damages including back wages and lost benefits, front pay and/or reinstatement; compensatory damages, including emotional distress, anguish, inconvenience, loss of income, loss of enjoyment of life, humiliation, and other indignities; punitive damages; attorneys' fees; and costs of litigation pursuant to RCW 49.60, *et. seq.* and other applicable law.

**WHEREFORE**, Plaintiff demands judgment as follows:

(a)    That this Court declare that Defendant's actions, policies and practices complained of herein violate the rights of Plaintiff as secured by federal law;

(b)    Temporarily, preliminarily, and permanently enjoin Defendant from future

discriminatory acts relative to discrimination based on race or sex and for opposing such discrimination;

(c)    Compensatory damages and general damages for mental and emotional suffering caused by Defendant's misconduct;

(d)    Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(e)    Back and front pay and other lost wages and benefits;

(f)    Reasonable attorneys' fees, costs and expenses of litigation;

(g)    Trial by jury as to all issues;

(h)    Prejudgment interest at the rate allowed by law; and

(i)    All other relief to which he may be entitled.

Respectfully submitted, this February 4, 2025.

**HALL & LAMPROS, LLP**

*/s/ Gordon Van Remmen*
Christopher B Hall
Georgia Bar No. 318380
Gordon Van Remmen
Georgia Bar No. 215512

300 Galleria Pkwy
Suite 300
Atlanta, GA 30339
T: (404) 876-8100
chall@hallandlampros.com

gordon@hallandlampros.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF FONT COMPLIANCE</u>

In accordance with Local Rule 7.1D, I do certify this document has been prepared in Times New Roman font, 14 point, in compliance with L.R. 5.1(C) of this Court.

**HALL & LAMPROS, LLP**

*/s/ Gordon Van Remmen*
Gordon Van Remmen
Georgia Bar No. 215512

## **CERTIFICATE OF SERVICE**

I hereby certify that on this February 4, 2025, the foregoing **First Amended Complaint For Damages** has been electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

This February 4, 2025.

**HALL & LAMPROS, LLP**

*/s/ Gordon Van Remmen*
Gordon Van Remmen
Ga Bar No. 215512