# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| GREGORY HANNAH-JONES, ) | |
| ) | CIVIL FILE ACTION NO.: |
| Plaintiff, ) | |
| ) | 1:24-cv-05318-SEG-WEJ |
| v. ) | |
| ) | |
| AMAZON.COM SERVICES, INC., ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT AMAZON.COM SERVICES LLC'S PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiff Gregory Hannah-Jones ("Mr. Hannah-Jones" or "Plaintiff"), by and through counsel, responds to Defendant Amazon.com Services LLC's ("Amazon" or "Defendant") Motion to Dismiss in part, pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiff's Amended Complaint is straightforward and broadly supported by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") (Counts I, III-IV), 42 U.S.C. § 1981 ("Section 1981") (Counts II and V) and the Washington Law Against Discrimination ("WLAD") (Counts VI-VII).

Defendant's Motion seeks dismissal of the Title VII claims based on the alleged failure to exhaust administrative remedies. The Motion seeks dismissal of the WLAD based on the assertion that the WLAD does not apply to Plaintiff's

claims. The Motion seeks partial dismissal of the Section 1981 to the extent that they seek recovery based on sexual orientation discrimination and to the extent they are based on events outside the statute of limitations.

## ARGUMENT

### I. Motion to Dismiss is a High Legal Standard.

To survive a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure, a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a plaintiff has met this pleading requirement, the court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347 (11th Cir. 2016).

A court should consider the four corners of the complaint relating to defendant's motion for dismissal for failure to state a claim. *Day v. Taylor,* 400 F.3d 1272, 1275–76 (11th Cir. 2005). When considering any conflicting evidence, the Court should favor the non-moving plaintiff. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.,* 598 F.3d 802, 810 (11th Cir. 2010). A court can only dismiss a complaint under Rule 12(b)(6) "when its allegations on-their-face show that an

affirmative defense bars recovery on that claim." *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001).

The burden for dismissing an action at the pleadings stage is a high one. *Twombly*, 550 U.S. at 545 ("plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]") (internal quotations omitted). Defendant's Motion fails to meet this high burden.

## II. Plaintiff's Section 1981 Claims Are Not Barred.

Defendant's Motion seeks partial dismissal of the Section 1981 to the extent that Plaintiff seeks recovery for conduct or events outside the statute of limitations or based on sexual orientation discrimination. Because Plaintiff does not base his Section 1981 claims on events outside the limitations period or based on sexual orientation, the Motion does not apply. The Motion should be denied on both grounds.

### A. Plaintiff's Claims Are Within The Limitations Period.

Plaintiff alleges discrimination throughout 2021 through his termination in 2023. Doc. 6, First Amended Complaint ("FAC"), at ¶¶ 38–39, 44–50, 68–100, 117–130, 137–139, 155–160, 195–204. The limitations period for the 1981 claims go back to November 19, 2020 based on the filing of the Complaint on November 19, 2024. (Doc. 1). All of Plaintiff's alleged 1981 claims therefore are within the

3

limitations period.

Defendant makes an utterly misleading and false argument that the limitations period should be February 4, 2021, based on the filing of the First Amended Complaint ("FAC") on February 4, 2025. (Doc. 6). Defendant claims that the November 19, 2024 original complaint filing (Doc. 1) does not apply because Plaintiff had dismissed an earlier filed complaint.

> Although Plaintiff did timely file an earlier complaint based on his First Charge, that complaint was dismissed for failure to show proof of service of process, and the present Complaint cannot "relate back" to it and cure his failure to timely file in accordance with 42 U.S.C. § 2000e-5(f)(1). *See* Case No. 12:24-cv-02736-LMM, ECF No. 1, 8; *Titus v. Miami Dade Cty.*, 757 F. App'x 824, 827 (11th Cir. 2018) (later-filed complaint does not relate back to earlier complaint dismissed without prejudice to make later-filed complaint timely under Title VII, as later-filed complaint was a new action and not an amended pleading); *Craddock v. Becerra*, No. 1:22-CV-01443-JPB, 2023 WL 1099755, at *4 (N.D. Ga. Jan. 27, 2023) (same) (subsequent history omitted).

Defendant's Motion to Dismiss Brief ("Def.'s Br.") (Doc. 9-1) at 7 n6. Defendant first raises this argument related to Plaintiff's Title VII claims but refers back to it when addressing Plaintiff's 1981 claims: "As noted, Plaintiff's FAC does not relate back to his original Complaint. *See Titus*, 757 F. App'x at 827; *Craddock*, 2023 WL 1099755, at *4." Def.'s Br. at p. 8-9 n9.

Defendant attempts to mislead with this argument. True, Plaintiff filed an earlier lawsuit that was dismissed. Case No. 12:24-cv-02736-LMM. But the Complaint in *this* lawsuit was filed on November 19, 2024. Defendant's Motion

4

suggests that the original complaint *in this case* was dismissed – and for that reason – the controlling date for limitations purposes is the date of the FAC. This argument is false. Plaintiff's timely filed November 19, 2024 Complaint in this case was *never* dismissed (despite Defendant's suggestion that it was). Also, the claims alleged in the FAC relates to the same "conduct, transaction, or occurrence from the original complaint. The date for limitations period thus is November 19, 2020.

Defendant's citation to *Titus* does not apply because the plaintiff in *Titus* relied on the filing date of a dismissed cause of action. Here, Plaintiff relies on the filing date of the present case which has not been dismissed. *Titus* had no application here. *Craddock v. Becerra* also does not apply because Plaintiff does not rely on the filing date of a formerly dismissed complaint. *Craddock*, like *Titus,* addresses a plaintiffs attempt to have a newly filed action relate back to the filing date of a dismissed lawsuit.

*Craddock* actually supports Plaintiffs claim that the amended complaint in fact relates back to the original complaint filed in this same action:

> The relation back doctrine does not apply here. Indeed, "a re-filed complaint [cannot] 'relate back' and revive a dismissed complaint." *Abram-Adams v. Citigroup, Inc.*, 491 F. App'x 972, 975 (11th Cir. 2012). Federal Rule of Civil Procedure 15(c) sets forth the circumstances in which "[a]n amendment to a pleading relates back to the date of the original pleading" for statute of limitations purposes. Because Plaintiff did not file an amended pleading but instead filed a new action, Rule 15(c) is "inapplicable here and cannot be used to cure Plaintiff's failure to file his claims within the applicable limitation periods." *Titus v. Miami Dade County*, 757 F. App'x 824, 827 (11th Cir.

5

2018).

*Craddock v. Becerra*, No. 1:22-CV-01443-JPB, 2023 WL 1099755, at *4 (N.D. Ga. Jan. 27, 2023), *appeal dismissed sub nom. Craddock v. Sec., Dept. of Health and Human Services*, No. 23-10686-CC, 2023 WL 3730871 (11th Cir. Apr. 18, 2023).[1]

The law is clear that the FAC relates back to the original Complaint in this case. Under Fed. R. Civ. P. 15, when the amendment relates to the same "conduct, transaction, or occurrence" from the original complaint, then the claims against the parties can relate back to the date of the original complaint. Fed. R. Civ. P. 15(c)(1). *See*, *Baker v. Ryobi Techs., Inc.*, No. 1:14-CV-1043-WBH, 2015 WL 11364350, at *1 (N.D. Ga. June 22, 2015) (holding that an amended complaint arising out of the same occurrence as the original complaint relates back to the original filing date under Rule 15(c)); *Bellamy v. TTEC Holdings, Inc.*, No. 1:23-CV-0940-SCJ-JSA, 2023 WL 11917731, at *7 (N.D. Ga. Aug. 25, 2023), *report and recommendation adopted*, No. 1:23-CV-0940-SCJ, 2023 WL 11917021 (N.D. Ga. Sept. 14, 2023) (finding that an amended complaint related back under Rule 15(c)(1) because the claims arose out of the same conduct and the plaintiff intended to assert the same claim in both the original and amended complaints); *Strange v. SPP, Inc.*, No. 1:21-

---

[1] *Abram-Adams v. Citigroup, Inc.*, 491 Fed. Appx. 972, 975–76 (11th Cir. 2012)(unpublished) also does not apply. Like *Titus* and *Craddock*, *Abrams-Adams* involved a Plaintiff seeking to rely on a complaint filed in an action that had been dismissed. *Id.*

6

CV-03052-SDG, 2022 WL 3652662, at *2 (N.D. Ga. Aug. 24, 2022) ("As long as the amended complaint refers to the same transaction or occurrence that formed the basis for the original complaint and the defendant was put on notice of the claim by the first complaint" the amendment will relate back.") (internal citations omitted).

To be clear, Plaintiff does not seek recovery for any discrimination that occurred prior to November 19, 2020. Plaintiff alleges from 2021 to 2023, Plaintiff was repeatedly denied promotion to a Level 6 position despite being qualified and successfully performing Level 6 duties. FAC at ¶¶ 38-40, 50-51; *see also* original Compliant (Doc. 1) at ¶¶ 30-38. Although he was experienced and well-qualified for promotion, Plaintiff was continually denied promotions that were given to less qualified white employees, such as Heather McCain and Kelly Coffee-Tavi. FAC. at ¶¶ 44-48, 58-67.  These promotion denials occurred within the four-year statute of limitations for Section 1981 claims, making them actionable.

Plaintiff's termination on November 22, 2023, also is a discrete act of discrimination and retaliation that falls well within the limitations period. Id. at ¶¶ 125-130.  Therefore, Plaintiff's Section 1981 claims, which cover conduct arising after February 4, 2021 (four years prior to the filing of this lawsuit) are timely.

### B. Plaintiff's Section 1981 claims arise from his status as an African American.

Plaintiff's Section 1981 claims are firmly rooted in his status as an African American and the racially discriminatory treatment he experienced during his

7

employment at Amazon. Section 1981 provides a broad prohibition against racial discrimination in the making, performance, modification, and termination of contracts, as well as the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. *See* 42 U.S.C. § 1981; *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008). Plaintiff alleges that, as an African American, he was denied promotional opportunities, subjected to a hostile work environment, and ultimately terminated based on his race. These allegations, taken as true, establish a prima facie claim under Section 1981.

Specifically, Plaintiff alleges that between 2021 and 2023, he was repeatedly denied promotion to a Level 6 position despite his qualifications and successful performance of Level 6 duties. See FAC at ¶¶ 38-40, 50-51, 54, 156. Instead, less-qualified white employees, including Heather McCain and Kelly Coffee-Tavi, were promoted during the same period. Id. at ¶¶ 58-67, 158-159. Plaintiff further alleges that his supervisor, Tobin Weldele, refused to endorse him for promotions and consistently favored white employees, perpetuating a pattern of racial discrimination. Id. at ¶¶ 43-48, 52, 157. These allegations demonstrate that Plaintiff was treated less favorably than similarly situated individuals outside his protected class, creating a plausible inference of racial discrimination.

Defendant's stated justifications for denying Plaintiff's promotion are vague and pretextual. Plaintiff's supervisor, Tobin Weldele, repeatedly delayed his

endorsement for promotion, citing vague reasons such as "wait until the next quarter." FAC at ¶¶ 47-48, 55. These justifications are inconsistent with Plaintiff's exceptional performance record, which included "Exceeds High Bar" performance reviews, merit-based bonuses, and commendations from managers. Id. at ¶¶ 40-42, 130. Pretext is further evidenced by the promotion of less-qualified white employees, such as Heather McCain and Kelly Coffee-Tavi, during the same period. Id. at ¶¶ 58-67. These facts support a finding that Defendant's actions were motivated by racial discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973) (establishing the burden-shifting framework for employment discrimination claims, where the plaintiff must first establish a prima facie case, the employer must then articulate a legitimate, non-discriminatory reason for the adverse action, and the plaintiff must show that the employer's reason is pretextual).

Plaintiff's claims also are supported by allegations of racially hostile conduct by his supervisors. For example, Plaintiff describes incidents where Senior Executive Jean-Marc Dupont was overly critical of his work, made belittling comments, and treated him less favorably than white employees. FAC at ¶¶ 74-80, 96, 110-113. Plaintiff also alleges that Reagan Cannon, a former supervisor, engaged in hostile conduct and publicly displayed a Confederate flag on her personal social media account during Plaintiff's employment. Id. at ¶¶ 85-87, 94-95. These actions reflect a workplace culture that tolerated and perpetuated racial discrimination,

thereby supporting Plaintiff's Section 1981 claims.

Plaintiff's claims also are further supported by a continuous pattern of discriminatory and hostile conduct by Senior Executive Jean-Marc Dupont and Director Reagan Cannon. Dupont's belittling comments, public undermining of Plaintiff's authority, and threatening behavior, along with Cannon's demeaning demands and public display of a Confederate flag, created a pervasive hostile work environment. FAC at ¶¶ 74-87, 94-95, 110-113. These acts are not isolated but are part of an ongoing pattern of racial discrimination that persisted throughout Plaintiff's employment.

Under the continuing violations doctrine, earlier acts of discrimination are actionable as part of a single unlawful employment practice. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (holding that discrete discriminatory acts are not actionable if time-barred, but hostile work environment claims may rely on acts outside the limitations period if they are part of a single, ongoing unlawful employment practice).

### C. Plaintiff Adequately alleged a failure to promote claim under Section 1981.

Plaintiff has adequately alleged a failure to promote claim under Section 1981 by meeting all the required elements. To establish a failure-to-promote claim, a plaintiff must show: (1) they are a member of a protected class; (2) they were qualified and applied for the promotion; (3) they were denied the promotion; and (4)

10

the position was given to someone outside their protected class, or the employer continued to seek applicants with the plaintiff's qualifications. *See Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002).

Plaintiff, an African American and member of a protected class, alleges that he was repeatedly denied promotion to a Level 6 position between 2021 and 2023, despite being fully qualified and successfully performing the duties of the position. See FAC at ¶¶ 38-40, 50-51, 156. Plaintiff further alleges that he met all promotional requirements, including receiving "Exceeds High Bar" performance reviews, executing work scopes, and leading global committees. Id. at ¶¶ 40, 44-46, 50-51. Despite his qualifications, Plaintiff's supervisor, Tobin Weldele, refused to endorse him for promotion and delayed the process under vague and pretextual excuses, such as telling him to "wait until the next quarter." Id. at ¶¶ 47-48, 55. Plaintiff also alleges that less-qualified white employees, including Heather McCain and Kelly Coffee-Tavi, were promoted to Level 6 positions during the same period, demonstrating that Amazon favored non-protected individuals over Plaintiff. Id. at ¶¶ 58-67, 158-159. These allegations establish a prima facie failure-to-promote claim under Section 1981, as they show that Plaintiff was treated less favorably than similarly situated white employees due to his race and that Defendant's stated justifications for denying promotion were pretextual.

### D. Plaintiff Adequately alleged retaliation under Section 1981.

Plaintiff engaged in protected activity by repeatedly complaining about racial discrimination to his supervisor, Tobin Weldele, and Human Resources, as well as filing a formal complaint with Amazon's Ethics hotline on November 14, 2023. FAC at ¶¶ 115-122. Within days of his Ethics hotline complaint, Plaintiff was suspended on November 17, 2023, and terminated on November 22, 2023. Id. at ¶¶ 123-126. The close temporal proximity between Plaintiff's protected activity and the adverse actions taken against him creates a strong inference of retaliatory motive. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (holding that temporal proximity and employer knowledge create an inference of causation). Defendant's actions are a clear violation of Plaintiff's rights under Section 1981.

### III. Plaintiff timely filed his EEOC charge and lawsuit.

Following multiple internal complaints, Plaintiff timely filed a charge of discrimination with the EEOC on December 1, 2023, after exhausting Amazon's internal processes. FAC at ¶¶ 12-13, 18. Filing an EEOC charge is the final step in the administrative process prior to initiating this lawsuit. Plaintiff's actions demonstrate that he complied with all procedural requirements under Title VII, exhausting both internal and external administrative remedies. Defendant's argument that Plaintiff failed to exhaust administrative remedies is without merit and should be rejected by the Court.

Amazon improperly conflates Plaintiff's First and Second EEOC charges in

its motion to dismiss. Plaintiff filed his First Charge of Discrimination on November 30, 2023. Doc. 9-3 at p. 7-8. Plaintiff filed the Second Charge of Discrimination, filed on June 20, 2024. Doc. 9-6 at p. 7-8. This Second Charge is independently timely under EEOC rules because Washington State is classified as a deferral state. *Pandya v. Bank of Am.*, No. C23-1947JLR, 2024 WL 519178, at *5 (W.D. Wash. Feb. 9, 2024) ("Because Washington is a 'deferral state,' a plaintiff must file his EEOC charge within 300 days of the allegedly offending conduct."). Washington has its own anti-discrimination law, the Washington Law Against Discrimination ("WLAD"), and an enforcement agency, the Washington State Human Rights Commission ("WSHRC"), which operates under a work-sharing agreement with the EEOC.

In deferral states, the deadline to file a charge with the EEOC is extended to 300 days, as long as the state has a Fair Employment Practices agency with a work-sharing agreement. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S. Ct. 2061, 2070 (2002) ("In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days."); *see also Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) (citing 42 U.S.C.A. § 2000e-5). This extension applies even when

the individual files directly with the EEOC, as the agreement permits the sharing of charges between the EEOC and the state agency. *Morgan*, 536 U.S. at 120; *Maynard*, 256 F.3d at 1265 ("[T]he EEOC's receipt of a complainant's charges automatically initiates proceedings of both the EEOC and the [state agency]."). Therefore, Plaintiff's Second Charge, filed on June 20, 2024, is well within the 300-day time limit, as the alleged discriminatory act (Plaintiff's termination) occurred on November 22, 2023.

Therefore, Plaintiff's Second Charge was timely filed under the 300-day deadline applicable in deferral states like Washington. Accordingly, Amazon's attempt to conflate the First and Second Charges fails, and Plaintiff's EEOC charge and lawsuit are procedurally proper and timely.

**IV.  Plaintiff's WLAD claims arise from incidents during the relevant period.**

The discrimination and harassment Plaintiff suffered originated from Defendant's decision makers and policies in Washington state, where Plaintiff was originally hired and worked. FAC at ¶¶ 29-33.  Plaintiff's employment relationship remained tied to Washington for the majority of his employment, and decisions regarding his employment, including denial of promotions and termination, were made by Washington-based personnel. Id. at ¶¶ 33, 49-50, 126.  Plaintiff's claims are tied to Defendant's Washington headquarters and HR leadership, and the discriminatory conduct related to Dupont occurred in Washington. These facts

establish a sufficient nexus between the alleged conduct and the state of Washington, supporting WLAD's applicability.

Furthermore, Plaintiff's WLAD claims are supported by his work in Seattle and interactions with Washington-based decision-makers, anchoring the applicability of Washington law. Complaint at ¶ 31. Discovery will further clarify the timeline of events and whether earlier conduct, including the repeated denials of promotion, is actionable under the continuing violations doctrine. Id. at ¶¶ 38-48, 58-67. Therefore, Plaintiff's WLAD claims are not time-barred, and Defendant's arguments to dismiss these claims should be denied.

Plaintiff's WLAD claims are timely under the three-year statute of limitations. Plaintiff alleges specific conduct occurring after November 19, 2021, including the hostile and aggressive confrontation with white Senior Executive Jean-Marc Dupont in August 2023. FAC at ¶¶ 101-113. During this incident, Dupont allegedly stood over Plaintiff, pointed in his face, and made threatening remarks during a talent review meeting, causing Plaintiff to fear for his safety. Id. at ¶¶ 110-113. Plaintiff promptly reported this incident to Alexis Stephens, Head of Human Resources, and his supervisor, Tobin Weldele, but Amazon failed to investigate or follow up. Id. at ¶¶ 13-115, 121. Instead, Plaintiff was suspended on November 17, 2023, and terminated on November 22, 2023. Id. at ¶¶ 123-126. These events fall squarely within the WLAD limitations period.

## CONCLUSION

The Court should deny Amazon's Motion to Dismiss because the Motion fails to meet the high burden required under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has presented well-pleaded allegations, supported by factual content, that establish plausible claims for relief under Title VII, Section 1981, and the Washington Law Against Discrimination. Plaintiff's claims are timely, properly grounded in law, and supported by specific factual allegations of discrimination, retaliation, and hostile work environment. Defendant's arguments to dismiss Plaintiff's claims based on procedural and substantive grounds are unpersuasive, as they misstate the facts, misapply legal standards, and fail to account for the full scope of Plaintiff's allegations.

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety and allow this matter to proceed to discovery, where Plaintiff will further substantiate his claims.

Respectfully submitted March 28, 2025.

**HALL & LAMPROS, LLP**

/s/ *Gordon Van Remmen*
Christopher B Hall
Ga Bar No. 318380
Gordon Van Remmen

Ga Bar No. 215512

300 Galleria Parkway
Suite 300
Atlanta, GA 30339
(404) 876-8100 telephone
(404) 876-3477 facsimile
chall@hallandlampros.com
gordon@hallandlampros.com

*Attorneys for Plaintiff*

## CERTIFICATE OF FONT COMPLIANCE

In accordance with Local Rule 7.1D, I do certify this document has been prepared in Times New Roman font, 14 point, in compliance with L.R. 5.1(C) of this Court.

**HALL & LAMPROS, LLP**

*/s/ Gordon Van Remmen*
Gordon Van Remmen
Georgia Bar No. 215512

## CERTIFICATE OF SERVICE

I hereby certify that on this February 4, 2025, the foregoing ***Plaintiff's Response In Opposition To Defendant Amazon.Com Services LLC's Partial Motion To Dismiss First Amended Complaint*** has been electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email

notification of such filing to all counsel of record.

This March 28, 2025.

**HALL & LAMPROS, LLP**

*/s/ Gordon Van Remmen*
Gordon Van Remmen
Ga Bar No. 215512